The 2012 1086 Mr. Robinson. May it please the court. Good morning your honor. This case is about equity and fairness. This is a appeal from the board of appeals. I thought it was about the statute. Also about the statute. Doesn't the statute define when a court can offer a remedy in the form of equity? The statute which I believe we're referring to 35 U.S.C. 251 which is the reissued statute has the language in it which is for the unexpired part of the term of the original patent. Truth is there's two sides to this. We've got the statute. So we're defining original patent. What's that? We're defining original patent. Well we're defining a lot of parts of that. And I first want to say that this language finds itself back in 1870. Substantially similar languages in the original patent act. Constitution goes back 100 years before that. OK. So I agree. So the language has been around in the form that it's in for quite some time now. 140 years we've had this language in 35 years. The 251 or its predecessors weren't which weren't called that. The reissue process is based on fundamental principles of equity and fairness. It's to be interpreted in that way. And this court has said that a number of times is that we should look to equity and fairness when interpreting the reissue statute. Is it the interpretation or application? I think it could be both. I think what is happening here is that a lot of terms are getting confused. And I hate to use term because term is the word of the day. Term is not the same as expiration date. Those two cannot be equated. A patent can expire for other reasons. A patent can expire because you fail to pay a maintenance fee on it. It still has term but the patent is expired. So those two can't be linked together. We can't say expiration and term necessarily go hand in hand the entire time. But we're talking about a patent here which had a terminal disclaimer before it issued. Correct. And then he wanted to withdraw it but the patent office didn't act on it and reprehensible though that may or may not be it didn't. And so you paid the final fee and you issued the patent and that was the original patent and it had the term which the disclaimer caused it to have. In other words it ended as a result of the terminal disclaimer. And so you were trying to reissue an expired patent. I disagree with you Your Honor. There's a difference between an expired patent and a patent that is subject to a terminal disclaimer. The terminal disclaimer disclaims term. The term is still there. It is simply disclaimed. Can the patent be sued on after the effect of the terminal disclaimer? No I don't think it can be because it would be unenforceable or inoperable. It's encumbered by that terminal disclaimer. And I want to make sure that I direct Your Honors to the terminal disclaimer language. We talk a lot about terminal disclaimers but you'll find an exemplary terminal disclaimer in appendix 249 I believe in this case. That's the one that's at issue. You can find a very very similar form today a decade later on the PTO website SB 26 and that terminal disclaimer has a lot of very long complicated language in it. It doesn't just say if it was just linking expiration dates as the patent office would have you do here. It could just simply say I agree this patent will expire the same day as patent X. It doesn't say that. It says hereby disclaims except as provided below and throws in some exceptions the terminal part of the statutory term of any patent granted on the instant application that would extend beyond the statutory grant of the prior patent. The statutory grant term is defined in 35 U.S.C. 154A. Remarkably the patent office here attempts to define term. It doesn't even refer to the section of the code that's captioned term. That's what 155A says and instead they go back into 156, 154B, 155 term extension, term adjustment provisions and then try to define some congressional intent to interpret this language that's been around for 142 years. Do you dispute any of the what seems to be the operative facts here? That you filed for the disclaimer, you paid the fee for the new issuance, new patent was issued, the disclaimer took effect. So basically you're asking us to invoke the remedial part of 251 that talks about it's a remedial statute and you're asking us in the name of fair play to extend the date of the patent. I want to get one critical fact in there that was left out. We filed a petition under Rule 1.182 to have the terminal disclaimer removed. We had the claims, we filed the terminal disclaimer, we then amended those claims and are in the position the terminal disclaimer is no longer necessary so we filed a petition to have the terminal disclaimer removed. The problem here from your perspective is that PTO took too long to respond to your petition and they should have responded before the patent was issued. Well, I don't believe the PTO has ever really properly responded to that petition. When they did respond to it at a belated date, they responded to it under the wrong section pretending that it had been filed after the patent was issued. They did respond eventually and you're saying they took too long and they should have done it before. Now you paid the fee for the issuance of the new patent. We did, Your Honor. You realize had you not paid that fee, you could have had PTO withhold the issuance of the patent until they make a determination on your petition. Well, I'm not so sure how that would happen if we don't pay the issue fee, the case is abandoned. Now we could have perhaps, maybe there was some way that we could file some RCE or CPA at that time, I'm not sure what the applicable provision was, but 35 U.S.C. 251 gives the six errors. By definition, as we said in our brief, your patent is inoperable. You've made a mistake. Now we assert the mistake here is in the patent office not timely acting on the petition that we filed. We've also enumerated other errors. I've said it was my fault for not recognizing it. We've thrown ourselves under the bus, but the fundamental error that's to be interpreted under equity and fairness lies with the patent office and not promptly acting in this petition. But it wasn't, wasn't there a remedy for that rather than letting, paying the final fee? I mean, I agree you have to, when you get a notice of allowance that pays, I don't know what it is these days, 90 days, whatever it is, you have to pay it. Or else could you have petitioned the director, we used to call it petitioning the commissioner, petitioned whoever, and then gone to the district court for failure of the patent office to act properly procedurally? There could have been a route of review that could have occurred there. And I prosecute 300 patents a year. Half my day, your honor, is spent calling the patent office and trying to get what they should, do what they should do. You know, the other half is actually dealing with substantive legal issues. And there may have been a route of review there. That may have been a better way to go. But by mistake, we didn't realize it. I didn't sit in my office and say, oh, I'm going to let this patent issue without the patent office acting on this petition and then file a reissue. But our case law is pretty clear in instances such as this that you cannot use, you cannot seek a reissue for a patent that's expired. Or that reissue is not available for the unexpired part of the term of a patent. The case law says that, and that's why I want to make sure that we're very clear about the difference between a patent that is terminally disclaimed and a patent that's expired. One case that Judge Lori authored that's right in the center of this from 1993 is the Morgan case. And in the Morgan case, it was similar, except in that situation what's different is the reissue process dragged on endlessly. And Morgan got the opportunity to enjoy his full 17 years of statutory term. At that time, it was 17 years, not 20 years. And he got to enjoy that all. And importantly, importantly, Judge Lori, in that case, you noted two things in there. Number one, you said there was no PTO delay. In the end, you said this was all Morgan's fault for delaying this. It wasn't the Patent Office that was delaying those things in there. And I think that that's significant. And it gets us back to the equity and the fairness in this case because the Patent Office has had basically 10 years to deal with this case. We filed it in 1990, I'm sorry, in 2002, January 2002. They didn't do anything in this case, in this reissue case, for two years. And look at A160. It's an internal email from the PTO. It probably shouldn't even be in the file, but it shows that almost two years after we filed it, they hadn't even assigned it to an examiner. And this is a reissue case that's supposed to be taken up in expedited manner for special processing. And what's interesting about that email, the date that's typewritten is crossed out and someone's written 12-22-2003 on it. That's the date a decade later the Patent Office now says your patent expired. They then dragged their feet for year after year after year. I called the Patent Office endlessly. I remember sitting in the interview room with Examiner Roy K. Potter and interviewing this case and showing him the then-controlling Durkheimer decision and saying this shows that we can do this. And he agreed. Two years later, he issues a new office action completely inconsistent with that and reneges on that agreement. We appeal the case to the Board of Appeals. I have precedent. I have Durkheimer, which appears to be very strong precedent. I walk into the Board of Appeals. Surprise, there's nine of them. That argument was over before it even started because they're going to reverse Durkheimer. So for ten years, there's been delay. There's been prejudice. We've tried in good faith. We've used the law. The equity and the fairness is just profoundly on our side. Could we have done things better? Judge Lurie, could we have followed a different route of review? We could have. There are errors. And that is what 35 years... In view of the law, the statute, and our precedent, show me where we can do what you want us to do. Where do we have the authority to order the PTO to extend the term of the patent? Of an expired patent. Of the expired patent. The patent's not expired. I don't want to be flippant and too aggressive, but the patent is not expired. The patent is terminally disclaimed. And look at the exceptions on the terminal disclaimer form themselves. You can file a terminal disclaimer, and if the underlying patent, that prior patent, later expires for some other reason, the terminal disclaimer is null and void. The Patent Office would have you say the disclaimed term never existed. But if I file a terminal disclaimer and disclaim my patent B over prior patent A, and then patent A expires for failure to pay the maintenance fee or some other reason, the term goes away. It's an exception on the form that they provide. And that non-existent term suddenly springs back into existence. Where you can find this, it's harmonious if you look through the law. Term is defined. Statutory term is defined. A terminal disclaimer, by its very name, disclaims term. It doesn't set an expiration date.  In their concurring opinion. Oddly, they thought, wanted us to file a new petition in the reissue, which I don't think was necessary. But that's the right holding. And that's where this case should be. I'm going to reserve my additional time. We will save it for you, Mr. Robinson. Mr. McManus. You will have the terminal argument here. Fitting. May it please the Court. This case starts and ends with a statute. 251 is clear. There is no authority for the director to reissue a patent for a term that is longer than what it came in the door with. Or, to look at it differently, what it went out the door with originally. When you file a terminal disclaimer under 253, you are redefining your term. Yes, every patent, conceptually, starts with the term defined in 154, 17 or 20 years. In this case, it would have been 17. But for the fact that they filed a terminal disclaimer under 253. But Mr. Robinson says the patent didn't expire. That is incorrect. The law is clear. It has been clear since Dunbar v. Myers in 1876. When you disclaim something under the statute, the statute then was different than 251. In pertinent language, it said that the reissue is granted. Any such disclaimer shall thereafter be taken and considered as part of the original specification. Back then, there were no terminal disclaimers. The terminal disclaimer provision doesn't show up until 1952. But Dunbar made it clear that when you file a disclaimer, that material is considered as if it never existed. This court echoed that holding more than 100 years later in Vectra in 1998. When it said, in a very similar context, where Vectra wanted this court to read the phrase, unexpired portion or the phrase, what is the original patent in 251, independent of a terminal disclaimer in 253. This court said, I can't do that. For multiple reasons, the least of which is, clearly there is a link between 251 and 253. They both refer to the original patent. What's Mr. Robinson to do when the patent office doesn't act? There were long delays with respect to the 182 petition. The patent office clearly wasn't acting efficiently, and he suffers from it. His client suffers from it. He had to pay his final fee. The oath that he originally filed in this reissue application acknowledged five errors. Four of them are his. As his oath acknowledges, he could have filed the paper under Rule 1313, which basically allows the applicant to say, stop. I got my notice of allowance, but there's something wrong. Something needs to be fixed. We need to basically put the brakes on this. Let's get all the eggs in the basket before I pay my fee. He didn't do that. That, unto itself, we get into this battle of equities. Let's be clear. This court has made clear that the reissue statute cannot be interpreted through the lens of equity. Morgan made clear. In that case, the issue was, of course, the expiration of the patent deprived the director of any authority to reissue. Morgan said, please, equity compels the director to do something, even though the patent's expired. That was the 1993 case? Correct. The court made clear. The statutory language is what it is. Here, the statute is clear. The director cannot reissue an expired patent. More globally, and this is important, because the director cannot reissue a patent with a term longer than the original. That's important here, because while we get into this debate about equities, that essentially means that once the patent, the 991 patent. That part's understandable, I think. The problem here, or a problem is, that you have an applicant who has filed his application for a disclaimer and then seeks to withdraw it. Correct. And PTO just simply doesn't do anything. Correct. We did not act on the petition. It's hindsight that says he should have done this at this particular point in time. But looking at the record, I think when these periods of time expired, the time to, as you say, file a petition for breaks, how was he to know then that PTO was not going to act on his petition to withdraw for another eight years? Well, I think let's sort of separate these out into two different things. One is there's what happened before he paid his issue fee in the 991 patent issue. And that's really what he's focusing on in terms of the whole equity. He files his petition, prosecution of the application continues, and ultimately in July or August of 2000, he gets his notice of allowance. At that point, it would seemingly be incumbent upon him, keeping order in his own house, to make sure that not only had the petition been acted on, but it had been granted. Now, he doesn't do that. It's not really relevant why. The salient point for the purposes of this issue, and what does 251 and 253 mean, is he pays his fee, the patent issues. At that point, based on the proper understanding of the statutory scheme, and it must include the statutory scheme, there's more at play here than just 253. There's 155, 156, all of the other provisions that Congress has enacted for ratcheting up term or, in the context of disclaimer, bringing it down. Every one of them is clear. Any such adjustment applies to the original patent. Every one of those works to, in essence, redefine the term. Well, let's stop right there. The terminal disclaimer, as I understand it, is essentially self-effectuating. It goes into the patent record, right? And it modifies the term of the patent. But if a party wants to withdraw that terminal disclaimer and asks to withdraw it, that is not self-effectuating. Is that right? The petition itself, no, it has to be decided on the merits. In this case, for example, he files his 182 petition based on the theory, I think, that he has amended his claims, and so he no longer needs the terminal disclaimer to overcome the obviousness-type double patent problem that it was originally filed to. That's a question of the merits. That issue, whether or not the terminal disclaimer is actually unnecessary, has never been broached. The remedy, I submit, to go back to Judge Lurie's question, leaving aside the steps he could have taken but did not to forestall the issuance and, in essence, drop this hammer of 251, would have been to pursue the petition decision. He gets his petition decision after the patent issues and the petition office explains, we have a problem, I can no longer act on your petition because to withdraw the terminal disclaimer as your petition seeks will, in essence, redefine the term and I can't. The PTO office position, as has been clear since 1995, is there is no effective mechanism for removing that terminal disclaimer after the patent issues. He could have pursued an APA action in district court reviewing the propriety of that decision and could have played the equities up there. He didn't do that. Instead, he filed a reissue. If I take Mr. Robinson's indications, I suspect he filed it because of the Durkheimer decision, which in 1996 had issued and the board, in essence, decided to go against the MVEP of the Patent and Trademark Office and say you could file a reissue application to withdraw your terminal disclaimer. There is one important distinguishing fact between this case and Durkheimer and that is in Durkheimer it was agreed that the terminal disclaimer was unnecessary because in that case the claims for which the terminal disclaimer had been filed were cancelled. They were not in the patent. So there was no dispute in Durkheimer that the terminal disclaimer was, in essence, unnecessary. That is not the case here. And the board was clearly motivated by that when it found, contrary to the MVEP, that you could process the reissue. But notably, Durkheimer is the one hiccup in the PTO's position uniformly since at least 1995. Durkheimer doesn't bind us. That is correct. It didn't even bind the board. And in this case the board expressly overruled Durkheimer to the extent it was inconsistent with prior PTO positions. So to take it back to the fundamental principle here, while we can talk about what the PTO did and what he did, what we didn't do, what he didn't do, that fundamentally cannot change the outcome here. This Court's decision in Vectra really gives the guideposts for the answer here. Vectra, in essence, held against the position that Yamazaki is taking here in the context of subject matter disclaimer. And there is absolutely no reason to pursue a different approach in the context of terminal disclaimer. 253 makes clear that, quote, In like manner, any patentee or applicant may disclaim or dedicate to the public the entire term or any terminal part of the term. In like manner, meaning the terminal disclaimer is treated exactly like the subject matter disclaimer. And the law is clear as to what that means vis-à-vis the original patent. One other thing, because it's related to this, is the notion that Yamazaki posits here that somehow the terminal disclaimer is not a redefinition, but simply a, I don't want my term, but I can keep it in reserve and tap it at some point, really runs contrary to Dunbar and Vectra. And more conceptually, with why we have disclaimer procedure in the first place, the public seeing the file, seeing the 991 patent in particular, on the face of it says, This patent is subject to a terminal disclaimer. And in this particular instance, if you go and look at the file, yes, you'll see his petition to withdraw it. But you'll see that it was never acted on. And the one in the public would see that he paid his issued fee and that patent went out the door. So it's, there's a, looking at the equities from history. Was there a double patenting rejection that preceded the filing of the terminal disclaimer? My understanding of how this terminal disclaimer came about, and Mr. Robinson, who I believe was involved in the prosecution, can correct me. But this is a continuation of a, this is a child of a parent. There was a double patenting rejection in the parent. This applicant filed the 253 application and immediately filed a terminal disclaimer. So if you look at the file of the 253 application, you will never see an obvious type double patenting rejection. But a disclaimer was clearly filed in essence to obviate one. It was preemptive. Exactly. That's my understanding, if Mr. Robinson can correct me if I'm wrong. But that's how I understand. Fundamentally, the purposeful point there is, this disclaimer was filed to avoid a rejection and ostensibly was successful. If this Court has no further questions, I'll yield the remainder of my time. Thank you, Mr. McManus. Mr. Robinson has about three minutes. Your Honor, I find it somewhat incredible. The Patent Office fails to do what they're supposed to do in acting in the petition, and we're discussing here what I should have done differently. And yes, in this reissue, as I did say, I did admit that I should have done things differently. To this day, we no longer do this now. We will never file a terminal disclaimer in a case until it's the very last thing to be done. Any double patenting rejection gets a foreign paragraph that says it's respectfully requested that the double patenting rejection be held in abeyance until there's a time indicated of allowable subject matter to avoid this very problem, because we don't know what's going to happen with the claims as prosecution continues. In this case, and I admit, I haven't looked at the prosecution in detail about how we got here because I've been so wrapped around the appeal process, but fundamentally, the terminal disclaimer was filed. Thereafter, I know the claims were amended to recite a specific carbon concentration, and it's believed that that carbon concentration that was recited made it unnecessary to have the terminal disclaimer. When we filed the petition, we referenced that, and I think there's some confusion in the briefs, but we did tell the examiner it had been amended to recite this carbon concentration, and we don't think it's any longer necessary to have a terminal disclaimer. The Dunbar case, as a solicitor did note, this was dealing with subject matter disclaimers. This is before terminal disclaimers were even available. That's the nose of wax case. I don't know that, but okay. And I think, Judge Krieger, you said that a terminal disclaimer is self-effectuating to modify the term. That's my point. It is exactly the correct approach. It is modifying the term by disclaiming it. It's not making it go out of existence. The patent term adjustment, patent term extension, we can modify terms, but we're disclaiming terms. You don't have exceptions in a statutory disclaimer, as in Dunbar, as in Vectra, where you're disclaiming these. You don't say, oh, I disclaim this subject matter unless person X happens to infringe it, then I want it back. But we've got exceptions on the terminal disclaimer. And just if we look at the Durkheimer decision, which of course isn't binding on you and isn't binding on anyone anymore, it's a much, I offer to you, it's a much sounder, harmonious understanding as to how we should treat terms and how terminal disclaimers should be enacted. Everything works together much better that way. We don't get the situation where term is not existent and then if you don't pay an issue to see an underlying patent, it springs back into life. We don't have to divine congressional intent by digging through patent term adjustment and extension provisions, which in the last 12 seconds I have, this was much simpler when 35251, USC 251 was done in 1870 because we didn't have the 20 year, we didn't have to worry about if the patent office is going to take forever to issue a patent. I'm out of time. Thank you, Your Honors. Thank you, Mr. Robinson. The case should be taken under advisement. All rise.